UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BONNIE KAY BULOW,

        Plaintiff,

vs.                                     Case No.  3:10-cv-322-J-MCR

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on March 29, 2005.  (Tr. 114-16, 818-20).  The Social Security Administration denied Plaintiff's application initially and on reconsideration.  (Tr. 35-38, 101-03, 106-07, 807-17).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), and hearings were held on May 24, 2007, September 19, 2007, and May 20, 2008.  (Tr. 824-988).  On

---

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 10).

June 30, 2008, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 20-34).

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied, thus

making the ALJ's decision the final decision of the Commissioner.  (Tr. 7-9).  Plaintiff

timely filed her Complaint in the U.S. District Court for review of the Commissioner's

decision.  (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since February 21, 2005, due to status post-

laminectomy with removal of benign tumor, history of positional vertigo, depression,

dysthymic disorder, pain disorder, and somatization disorder.  (Tr. 136-37, 840-42).

### B.    Summary of Evidence Before the ALJ

Plaintiff was 42 years old at the time of the ALJ's decision and has a high school

education, having obtained a GED.  (Tr. 19, 139).  Plaintiff has past relevant work

experience as a certified nurse's assistant, screen printer, dairy farmer, order puller, and

assembler.  (Tr. 960-65).  Plaintiff's medical history is discussed at length in the ALJ's

decision and will be summarized herein.

Between January 2004 and May 2004, Plaintiff was diagnosed with and treated

for pseudophakia of the left eye, suspected glaucoma, dry eyes, and cataracts.  (Tr.

252-62).  During this time period, she was also treated for leg pain at the Family Medical

Center.  (Tr. 278-84).  On April 16, 2004, Plaintiff reported pain in her hips.  (Tr. 282).

Examinations revealed decreased range of motion of the right hip and positive straight

leg raising with increased back pain.  (Tr. 280).  A lumbar spine MRI performed on April

29, 2004 indicated the existence of a lesion at L2-L3.  An EMG and nerve conduction study showed fibrillations in the right vastus medialis muscle, suggestive of L-4 radiculopathy.  (Tr. 279).  Plaintiff was diagnosed with right sciatica and referred to a neurosurgeon.  (Id.).  On May 25, 2004, Plaintiff underwent a lumbar laminectomy at L2-L3 and biopsy and excision of intradural tumor at L2-L3 performed by neurosurgeon Dr. Mark Spatola.  (Tr. 472, 480-83).

Between June 2004 through August 2004, Plaintiff was treated for dizziness by Dr. John Fetchero, an ear nose and throat specialist.  She was diagnosed with rhinosinusitis with a septal deviation and eustachian tube dysfunction.  On July 13, 2004, Plaintiff underwent EMG testing which showed mild left benign paroxysmal positional vertigo.  (Tr. 223-28).

On January 2005, Plaintiff reported numbness of her rectum and vagina, and hemorrhoid bleeding. (Tr. 293).  Between February 2005 and August 2005, Dr. Andrea Trescott of the Pain Center treated Plaintiff.  (Tr. 351-62).  She reported numbness and tingling all over and described her pain as a burning, sharp, shooting pain that was constant.  Her pain was increased by sitting, standing, walking, lifting, bending and weather changes.  Examination revealed her mood was anxious and depressed and she had tenderness to palpation of the lumbar spine and bilateral sacroiliac joints.  She was diagnosed with neuropathic pain, limb pain, and peroneal pain.  (Id.).

On July 28, 2005, Dr. Peter Knox performed a consultative psychological examination of Plaintiff.  (Tr. 314-19).  Examination revealed her mood was dysphoric, and she had a somber affect.  She described being in pain all day and constant

depression.  Plaintiff was diagnosed with dysthymic disorder, pain disorder with depressed mood, pain in her hips and numbness in the lower part of her body, vertigo and was assigned a GAF of 50.  (Id.).

Plaintiff's symptoms continued through 2005 and she received ongoing treatment from Dr. Andrawis at the Pain Center.  (Tr. 347-50, 401).  She underwent a bilateral sacroiliac joint injection and was diagnosed with bilateral sacroilitis, low back syndrome.  (Id.).  On October 3, 2005, Dr. Andrawis prescribed a wheelchair for Plaintiff.  (Tr. 347).  On December 9, 2005, Plaintiff was diagnosed with chronic imbalance high frequency, sensorineural hearing loss, and suspected migraine associated dizziness.  (Tr. 444-45).

Between July 2006 through September 2007, Plaintiff received treatment from Dr. Robin O'Hearn, a psychologist, and was diagnosed with major depressive disorder.  (Tr. 511-38, 777-84).  On May 16, 2007, Dr. O'Hearn completed a mental RFC assessment and opined Plaintiff suffered from nausea, drowsiness, impaired concentration and memory, fatigue and constipation as side effects of her medications.  (Tr. 534-38).  Additionally, Dr. O'Hearn opined Plaintiff would have no ability to complete a normal workday or week or perform at a consistent pace without an unreasonable number of rest periods.  She would be unable to meet competitive standards in carrying out short instructions, maintaining attention for two hour segments, maintaining regular attendance and be punctual, responding appropriately to work changes in a routine work setting and deal with normal work stresses due to her symptoms of fatigue, and suffered from poor concentration and anxiety which would impair her ability to work independently.  (Id.).

On May 23, 2007, Dr. Andrawis completed a physical RFC form opining Plaintiff would be incapable of performing even low stress jobs and could not walk any distance without pain.  (Tr. 596-99).  She could only sit one hour at a time and stand for only ten minutes at one time and sit, stand and walk for a total of less than two hours in an eight hour work day.  She would need a job that permitted shifting positions at will and would need to take unscheduled breaks.  Plaintiff required a cane when standing or walking and could never lift or carry more than ten pounds.  (Id.).

On October 8, 2007, Dr. Knox re-examined Plaintiff at the request of the ALJ. (Tr. 695-709).  Examination revealed Plaintiff's mood was dysphoric and she had a sad, tired affect.  She reported being unable to lift or carry anything due to dizziness and pain.  She was diagnosed with major depression, somatization disorder, post traumatic stress disorder, depressive personality disorder, back pain and was assigned a GAF of 50.  Dr. Knox also completed a medical source statement indicating she would have marked limitations in responding to usual work situations and to changes in a routine work setting and moderate limitations in multiple other areas.  (Id.).

On November 6, 2007, Dr. Dewey examined Plaintiff at the request of the ALJ. (Tr. 710-18).  Examination revealed her gait was antalgic with a noticeable limp and she was using a cane.  Dr. Dewey completed a medical source statement opining Plaintiff could never lift or carry any weight above ten pounds.  She could only sit for fifteen minutes, stand for five to ten minutes, and walk for one to two minutes with support at one time without interruption.  She could sit or stand for two hours and walk for one hour in an eight hour work day.  She required a cane to ambulate, her posture was stooped,

-5-

and she was unstable.  Plaintiff could never reach overhead or push/pull with her right

and left hand and exertional maneuvers markedly increased her pain.  She could never

use her feet for operation of foot controls due to back pain.  She could never climb

stairs, ramps, ladders or scaffolds, balance, stoop, kneel, crouch or crawl. She should

never be exposed to unprotected heights, moving machinery or operate a motor vehicle.

She could not travel without assistance or ambulate without a wheelchair or cane.  (Id.).

On January 23, 2009, Plaintiff underwent an MRI of the lumbar spine which

Between December 2007 through February 2008 Plaintiff was treated at the

Mayo Clinic by Dr. David Capobianco.  (Tr. 720-44).  She was diagnosed with chronic

low back and extremity pain likely due to spinal cord tumor as well as possible chronic

lumbosacral radiculopathies and small fiber neuropathy.  (Id.).  Between January 2008

through May 2008, Dr. Andrawis continued treating Plaintiff for pain.  (Tr. 748-64).

On January 23, 2009, Plaintiff underwent an MRI of the lumbar spine which

revealed mild multilevel lumbar spondylosis with minimal to mild AP narrowing of the

foramina at L5- S1, otherwise only minor if any stenosis.  (Tr. 821-23).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful

activity, she is not disabled. 29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I).  Second, if a

claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 22).  At step two, the ALJ found Plaintiff had the following severe impairments: status-post laminectomy at L2-3 with removal of benign tumor; history of positional vertigo without evidence of recent treatment; depression; dysthymic disorder; pain disorder; and somatization disorder.  (Tr. 22-24).  At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in

Appendix 1, Subpart P of the Regulation No. 4.  (Tr. 24-28).  At step four, the ALJ

determined Plaintiff retained the residual functional capacity ("RFC")[2] to:

> sit for up to six hours in an eight hour day and stand and
> walk for four hours in an eight hour day with the need to
> alternate her position every 30 to 60 minutes between sitting
> and standing/walking; she can lift/carry 20 pounds
> occasionally and 10 pounds or less more frequently; she can
> bend, stoop, crouch, kneel and climb stairs occasionally; she
> can do no crawling or climbing of ladders, ropes or scaffolds
> or work at unprotected heights. [Plaintiff] has no limitations
> with manipulation or communication. [Plaintiff] needs to work
> in a temperature controlled environment allowing frequent
> access to a restroom and she needs to use a hand-held
> assistive device when standing and walking and therefore
> has only one hand to use for lifting and carrying. [Plaintiff]
> has had "none to mild" limitations with her ability to
> understand, remember and carry out short, simple
> instructions, "mild to moderate" and "moderate" limitations in
> her ability to interact appropriately with the public,
> supervisors and co-workers, respond appropriately to usual
> work situations and to changes in a routine work setting.

(Tr. 28-32).

The ALJ then determined Plaintiff was unable to perform any of her past relevant

work.  (Tr. 32).  However, based on testimony from a vocational expert ("VE"), the ALJ

determined that other jobs existed in significant numbers that an individual with

Plaintiff's RFC, age, education, and work experience could perform.  (Tr. 33-34).

Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social

Security Act.  (Tr. 32).

---

[2]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations.  20 C.F.R. §§ 404.1545, 416.945.  The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation.  Id.

III.   **ANALYSIS**

A.   **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B.**     **Issues on Appeal**

Plaintiff raises the following three issues on appeal: (1) whether the ALJ erred in

failing to incorporate Plaintiff's marked limitations in daily activities in the RFC and

hypothetical question posed to the VE (Doc. 12, pp. 17-21); (2) whether the ALJ erred in

failing to adequately address Plaintiff's urinary and bowel incontinence (Id. at pp. 12-

17); and (3) whether the ALJ erred in crediting the opinions of the nonexamining

testifying medical experts over the opinions of examining physicians (Id. at pp. 21-25).

The Court will address each of these issues.

>    **1.**     **Whether the ALJ erred in failing to incorporate Plaintiff's**
>    **marked limitations in daily activities in the RFC and**
>    **hypothetical question posed to the VE.**

Plaintiff contends the ALJ's RFC finding is not supported by substantial evidence

because the ALJ failed to include all the limitations caused by Plaintiff's mental

impairments.  (Doc. 12, pp. 17-21).  In considering an individual with a mental

impairment, the ALJ is required to use the "'special technique' dictated by the

[Psychiatric Review Technique Form] for evaluating mental impairments." Moore v.

Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(a)).  This

technique requires separate evaluations on a four-point scale of how the individual's

mental impairment impacts four functional areas: "activities of daily living; social

functioning; concentration, persistence, or pace; and episodes of decompensation." Id.

(quoting 20 C.F.R. § 404.1520a-(c)(3-4)).  The ALJ is required to complete a PRTF and

append it to the decision or incorporate the results of this technique into the findings and

conclusions of his decision.  Id. at 1214.  Failure to do so requires remand.  Id.

Plaintiff argues the ALJ failed to apply the limitations noted in the PRTF to Plaintiff's ultimate RFC and the hypothetical posed to the VE.  Specifically, Plaintiff's marked limitation in daily activities.  (Doc. 12, pp. 17-21).  The Commissioner responds that Social Security Regulation 96-8p dictates that the limitations identified in the PRTF are not an RFC assessment but are used at steps 2 and 3 to determine the severity of the mental impairment and whether it meets the criteria of a listed impairment.  (Doc. 14, pp. 17-22).

SSR 96-8p provides:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form ("PRTF") requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings.  The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.  The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p.  Further, SSR 96-8p requires the RFC to address nonexertional capacities, including mental limitations and restrictions, which must be expressed in terms of work-related functions.  SSR 96-8p.  "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond

appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting."  SSR 96-8p.

Accordingly, the Commissioner is correct that the limitations noted in the PRTF are not an RFC, however, it does not necessarily follow that they should not be included in the RFC or considered at steps four and five of the sequential analysis.  Instead, the ALJ is required to conduct "a more detailed analysis" of the four categories listed in the PRTF when formulating the RFC and express Plaintiff's nonexertional capacity in terms of work-related function.  Indeed, the Eleventh Circuit recently rejected the Commissioner's argument and held that even though "the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter."  Winschel v. Commissioner of Social Sec., __ F.3d. __, 2011 WL 198372, *__ (11th Cir. Jan. 24, 2011) (internal citations omitted).

In Millhouse v. Astrue, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or pace and in social functioning, but determined these limitations only limited the plaintiff to unskilled work in the RFC.  Millhouse v. Astrue, No. 8:08-CV-378-T-TGW, 2009 WL 763740, at *2 (M.D. Fla. Mar. 23, 2009).  The court reversed and remanded, reasoning:

> Simply finding that the plaintiff had a mental limitation of unskilled work clearly does [not] [sic] constitute 'a more detailed assessment by itemizing various functions contained in the broad categories' of social functioning and concentration, persistence, or pace.  Furthermore, moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work.  'Unskilled work' is defined as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.'  20

> C.F.R. 416.968(a).  It is not apparent to me that a person with
> moderate limitation in concentration, persistence, or pace
> could adequately perform all types of unskilled sedentary
> work.

Id. at *3-4.

In the instant case, the ALJ concluded that Plaintiff suffered from marked limitations of daily living.  However, the ALJ does not reference Plaintiff's mental impairment in his RFC determination.  (Tr.28, 980-81).  Therefore, following the reasoning in Millhouse, the RFC does not adequately reflect Plaintiff's mental impairment and certainly does not reflect "a more detailed analysis" with specific findings as to the impact of Plaintiff's limitations.

However, as this Court noted in Corbitt v. Astrue, when the ALJ relies on the testimony of a VE, "the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE" rather than the RFC simply cited in the ALJ's decision.  Corbitt v. Astrue, No. 3:07-CV-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (citing Dowell v. Barnhart, No. 06-1023-WEB, 2006 WL 4046164, at *3 (D. Kan. Oct. 31, 2006)).  In the Corbitt case, the ALJ did not include in his RFC the plaintiff's moderate limitations in maintaining concentration, persistence and pace as noted in the PRTF.  Corbitt, 2008 WL 1776574 at *2.  However, the ALJ specifically included the moderate difficulty in maintaining concentration, persistence and pace in the hypothetical to the VE.  Id. at *3.  As such, the Court found no error.  Id.

When the ALJ does not specifically include his PRTF findings in the hypothetical posed to the VE, the Court must analyze the hypothetical to determine if it properly accounts for plaintiff's mental limitations.  In the instant case, in the hypothetical posed

to the VE, the ALJ did not explicitly include any limitation regarding Plaintiff's activities of daily living, despite the ALJ's finding that Plaintiff suffered from marked limitations in this area.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999)). Because the hypothetical posed to the VE in this case did not comprise all of Plaintiff's impairments, specifically, her marked limitations of daily living; the ALJ's decision is not supported by substantial evidence and remand is necessary.

> **2.      Whether the ALJ erred in failing to adequately address Plaintiff's urinary and bowel incontinence.**

Plaintiff argues the ALJ erred in finding her urinary and bowel incontinence does not constitute a severe impairment, limiting her ability to perform work. (Doc. 12, pp. 12-17). The ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe, either singularly or in combination, to create a disability. See Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). "[A] hearing before an ALJ is not an adversarial proceeding" and "the ALJ has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir.1997). Accordingly, the ALJ must probe into all relevant facts, even where a claimant is represented by counsel. Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).

Here, the Court finds the ALJ did not adequately evaluate Plaintiff's urinary and bowel incontinence.  Although medical expert Dr. Schorn recommended that Plaintiff undergo a consultative urological assessment, the ALJ did not order such an assessment.  Instead, the ALJ relied on the lack of treatment by a urologist, the lack of treatment for bladder training, the lack of stains and odor on Plaintiff's person, and because Plaintiff did not ask to use the restroom during the hearing as grounds for disregarding Plaintiff's urinary and bowel incontinence.[3]  (Tr. 29).   This reliance is insufficient considering the medical evidence documenting the numerous occasions in which Plaintiff reported and/or was treated/tested for urinary and bowel incontinence. See e.g. (Tr. 296, 349, 351-352, 466, 491, 526, 605, 607).

Additionally, even the Commissioner's medical expert testified that the case was not "properly worked up" and that the diagnoses of bowel and urinary incontinence could be easily confirmed upon appropriate examination.  (Tr. 884-85).  He specifically stated that Plaintiff's alleged incontinence could occur "secondary to nerve injury" and that this was "very easy to prove" and added that he "tended to believe that it probably exist[s]".  (Tr. 892).  Indeed, the ALJ failed to make any findings as to the frequency and severity of Plaintiff's urinary and bowel incontinence.

Accordingly, the Court finds the ALJ's analysis failed to include a meaningful evaluation of Plaintiff's urinary and bowel incontinence and the impact of these conditions on her ability to perform sustained work.  Therefore, on remand, the ALJ

---

[3]The Court notes that Plaintiff did not testify that she requires to use the restroom multiple times per hour.  Rather, her testimony was that she has accidents about four or five times a week and wears an adult diaper.  (Tr. 972).

shall adequately evaluate the severity and effect of Plaintiff's urinary and bowel

incontinence.[4]

**3.    Whether the ALJ erred in crediting the opinions of the nonexamining testifying medical experts over the opinions of examining physicians.**

Plaintiff argues the ALJ failed to properly consider the treating source opinions of

Drs. Dewey, Andrawis, and O'Hearn.  (Doc. 12, pp. 21-25).  When considering a

treating physician's testimony, the ALJ must ordinarily give substantial or considerable

weight to such testimony unless good cause is shown to the contrary.  Phillips v.

Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440

(11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Such a preference is given to treating

sources because such sources are likely to be best situated to provide a detailed and

longitudinal picture of the medical impairments.  Lewis, 125 F.3d at 1440.  Furthermore,

the ALJ must specify the weight given to the treating physician's opinion or reasons for

giving the opinion no weight, and the failure to do so is reversible error.  MacGregor,

786 F.2d at 1053.

Good cause for rejecting a treating source's opinion may be found where the

treating source's opinion was not bolstered by the evidence, the evidence supported a

contrary finding, or the treating source's opinion was conclusory or inconsistent with his

or her own medical record.  Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at

---

[4]This Court is not holding the Plaintiff's urinary and bowel incontinence constitutes a severe impairment, effecting Plaintiff's ability to work.  Rather, the Court finds the ALJ failed to adequately evaluate the same.

1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  Where the

Commissioner has ignored or failed properly to refute the treating physician's testimony,

such testimony, as a matter of law, must be accepted as true.  MacGregor, 786 F.2d at

1053.

Here, it appears that in support of the ALJ's decision to discredit the opinions of

treating physicians Drs. Dewey, Andrawis, and O'Hearn, he relied almost exclusively on

the records and opinions of a nonexamining source.  (Tr. 23-32).  "The opinion of a

non-examining physician does not establish the good cause necessary to reject the

opinion of a treating physician."  Johnson v. Barnhart, 138 Fed. Appx. 266, 269 (11th

Cir. 2005).  Moreover, the opinions of a non-examining physician do not constitute

substantial evidence when standing alone.  Spencer ex rel. Spencer v. Heckler, 765

F.2d 1090, 1094 (11th Cir. 1985).

As further support of the ALJ's decision to discredit the opinions of Drs. Dewey,

Andrawis, and O'Hearn, the ALJ noted that these physicians relied on Plaintiff's

subjective complaints rather than the objective medical evidence.  (Tr. 23-32).  The

Court finds this reasoning is insufficient as the record certainly contains objective

evidence which supports Drs. Dewey, Andrawis, and O'Hearn's opinions.[5]  Accordingly,

on remand, the ALJ is directed to properly evaluate the medical opinions in this case.

---

[5]For example, Plaintiff uses a wheelchair and a cane to ambulate and has undergone
multiple MRI's with the 2008 MRI showing "mild deformity in tethering of the lower cauda equida
suggesting the possibility of lumbar arachnoiditis." (Tr. 728). She has undergone physical therapy,
injections for pain, and taken narcotic medications.  Over the years, her bowel and urinary
incontinence have remained problematic and she continues to suffer from dizziness.  Since her
2004 surgery, she has declined.  The medical evidence is consistent as to her chronic pain
syndrome and her treating sources have issued consistent opinions as to functioning.

## IV.     CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) re-evaluate Plaintiff's RFC and pose a proper hypothetical to the VE; (2) adequately address Plaintiff's urinary and bowel incontinence; (3) properly evaluate the medical opinions in this case; and (4) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **However, this Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  15th  day of August, 2011.

_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

-18-